**NANCY BRYN ROSENFELD**
Attorney at Law
California State Bar No. 99108
444 West C Street, Suite 210
San Diego, California 92101
(619) 234-3616
nrosenfeld11@gmail.com

Attorney for Defendant
**JOSE DE JESUS GOMEZ**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### (HONORABLE CATHY A. BENCIVENGO)

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **JOSE DE JESUS GOMEZ** ) <br> Defendant. ) <br> _____ ) | Criminal No. 20 cr 0002 CAB <br><br> **SENTENCING MEMORANDUM** <br><br> **Date:** April 23, 2021 <br> **Time:** 9:30 a.m. |

TO: RANDY GROSSMAN, INTERIM UNITED STATES ATTORNEY; MELANIE PEARSON, ASSISTANT U.S. ATTORNEY; AND U.S. PROBATION :

The defendant, Jose de Jesus Gomez, by and through counsel, submits this Sentencing Memorandum.

**I**
**STATEMENT OF FACTS and INTRODUCTION**

Jose de Jesus Gomez is a 34 year old United States citizen who lives in Tijuana. Mr. Gomez attempted to bring a large amount of methamphetamine into the United States. He is sincerely remorseful. He asks the court to sentence him to the minimum mandatory of 60 months. Although this is a sentence that is greater than necessary under 18 USC 3553(a), it is the minimum sentence under the statute of conviction. He

requests a recommendation for the RDAP program to address his longstanding drug problem.

## II
## SENTENCING CONSIDERATIONS

**1)  The nature and circumstances of the offense and the history and characteristics of the defendant.**

<u>The Offense Conduct</u>

On December 6, 2019, Jose de Jesus Gomez attempted to drive through the Otay Mesa point of entry while his Ford F-150 contained 14 kilos of methamphetamine. Additional Details are provided below.

<u>Jose de Jesus Gomez, History and Characteristics</u>

The history contained in the presentence report is accurate. Jose has no medical issues, but for many months after his arrest was distressed, unstable and very emotional. He admits to having a serious problem with drugs. He lived in a sober living home for a few months in the past but did not stay sober very long afterwards.

For about a year prior to his arrest, Jose had been living in Tijuana with Perla P. and her children.  He crossed the border frequently to work in the United States.  Around the time of his arrest, he was hoping to get a job in Santee  to look for a gardening laborer job. He is also an experienced welder. He had been unemployed for several months prior to the offense.

Jose and Perla  P. had known each other for four years.  She described him as "an excellent person…he's calm and good to me and my kids…my kids called him dad and we all miss him very much."  As long as she has known Jose, he has suffered from depression.  She does not think he has ever had any type of counseling, but believes he would benefit from counseling and medication.   He was providing for her and her children by working as a welder and a gardener.

**2)  The Need for Sentence imposed; 3)  Available sentence.**

A sentence of 60 months is available and reflects the seriousness of the offense. It will satisfy the need for just punishment.

**4) The Guideline Range.**

*Base offense level*

The government agrees that the base offense level should be 38. The parties further agree to downward adjustments of 3 points for acceptance of responsibility, and 4 levels for fast track. The defense requests a further 2 level reduction for role in the offense with a corresponding 4 level reduction in the base offense level. The defense requests further variances considering Mr. Gomez's limited criminal history, pandemic concerns and other 3553(a) factors for sentence of 60 months.

**Adjustments and Departures**

<u>Acceptance of Responsibility</u>

Pursuant to USSG 3E1.1(a) and (b), the offense level should be reduced by 3 due to Mr. Gomez's timely agreement to plead guilty.

<u>Fast Track-Early Disposition</u>

The government agreed to a 4 level departure under 5K3.1 for the agreement to waive indictment and plead guilty early.

<u>Role in the Offense</u>

Jose was driving a car that was in his own name and he had owned the car for approximately one year. The day before the arrest, he loaned his car to an acquaintance. It was at that time, the drugs were put in his vehicle. Jose knew that the individual was involved in drug smuggling and deliberately did not ask him questions about what might be placed in his vehicle. He was not certain how much he would be paid but knew he would be compensated for driving the loaded vehicle across the border. He expected to get further directions after he had crossed the border.

A downward adjustment is requested based on role in the offense under 3B1.2. Although Mr. Gomez transported the drugs, he did not own them and had no say in how they were handled. He was a courier, and his actions were directed by others. All the considerations enumerated in 3B1.2 support

this analysis.

   i. the degree to which the defendant understood the scope and structure of the criminal activity;   *Mr. Gomez did not.*

   ii. the degree to which the defendant participated in planning or organizing the criminal activity; *He was involved for a very short time.*

   iii. the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; *None*

   iv. the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;   *He did as directed.*

   v. the degree to which the defendant stood to benefit from the criminal activity.     *He was not sure but it would have been very small compared to the value of the drugs. .*

   All of the factors favor a finding of minor role in the offense. There is no information provided showing any more than a minor role.

   <u>Combination of Factors</u>

   Mr. Gomez's case involves a combination of factors that justify a departure or variance in this case, including limited criminal history, substance abuse history and pandemic concerns.

   The following is a translation of a communication received from Mr. Gomez's brother:

   *Through this letter, I would like to express the following about my brother Jose Gomez. My brother has always been a hardworking, honest, and caring man. He also helps out with household chores and is very caring towards his family. Amongst our family, Jose is the one who stands out because of his nobility. Sincerely,   Schlali Gomez Ornelas*

.      Pandemic Concerns

The COVID pandemic has impacted everyone but some individuals have been affected more than others.  Mr. Gomez has had to endure constant schedule changes while in custody,  including phone call scheduling and probation interview scheduling.  He was unable to reach family members. One of his cellmates died from the coronavirus. This was very frightening for him. As he only has one kidney he began to worry more about catching the virus.  He has been unable to meet with anyone for the last 13 months.   This has been a terrible experience for him.  Although he previously served a sentence in county jail for a state court offense, his longest time in continuous custody was one year. This sentence will be almost 5 times as long.  Mr. Gomez' plea was negotiated prior to the additional two levels now typically recommended by the government for pandemic concerns. Mr. Gomez certainly has suffered more than his share of the impact of the virus.

**5) Sentence Disparity**

No disparity would result if Gomez  is given a sentence of 60 months.

**6)  Restitution**

There is no restitution consideration in this case.

Comments to the Presentence Report

Mr. Gomez had the following comments/corrections to the report:

Page 8 #32:  His brother, Ruben, now lives in Texas, but Jose has not talked to him for a while.

Page 9 #36:  Perla was in contact with Mr. Gomez' defense investigator often and sent various emails stating her support for Jose.

Page 9 #37:  He and Perla are in touch again and plan to reunite when he is released.

Page 9 #38: Jose hopes to live in Mexico and and work in the United States. With his welding experience and construction laborer skills, he believes he

will have no trouble finding work.

Page 9 #40:  Jose does not believe he has mental health issues, but agrees that he has suffered from depression in the past.

Page 10 #44:  The probation officer noted that they were unable to locate a business by the name of Rainbow Steel.  However, in fact the defense investigator located a Rainbow Steel in Santee at 9484 Mission Park Place.
.

### III.
### CONCLUSION

A sentence of 36-48 months would be a sufficient sentence in this case and would be a significant punishment for Mr. Gomez, considering his limited prior incarceration.  However, as the minimum sentence is 5 years, a 60 month sentence is requested.  Mr. Gomez will able to use his time productively and hopes to participate in the RDAP program

He asks to be able return to family in Mexico upon release.

Respectfully Submitted,

Dated: April 16,  2021          */s/ Nancy Bryn Rosenfeld*___
                                Nancy Bryn Rosenfeld
                                Attorney for Defendant
                                Jose de Jesus Gomez